UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GIC SERVICES, LLC | CIVIL ACTION |
| v. | NO. 13-6781 |
| FREIGHTPLUS (USA), INC. | SECTION "C" (5) |

## ORDER AND REASONS

This matter comes to the Court on the Motion to Dismiss FreightPlus (USA), Inc.'s Third-Party Complaint for Failure to State a Claim Under FRCP 12(b)(6) filed by third-party defendant Industrial Maritime Carriers, LLC (hereinafter "IMC") (Rec. Doc. 48) and the Motion for Leave to File Second Amended Third-Party Complaint to Dismiss Certain Claims filed by defendant/third-party plaintiff FreightPlus (USA), Inc. ("FreightPlus") (Rec. Doc. 66). IMC and FreightPlus oppose each other's motions. Rec. Docs. 61 & 74. Having considered the record, the law, and the memoranda of counsel, the Court DENIES IMC's motion and GRANTS FreightPlus's for the reasons that follow.

## I. BACKGROUND

This matter arises out of the shipment of a tugboat, the M/V REBEL, aboard a vessel, the M/V INDUSTRIAL DESTINY, owned and operated by IMC. It is undisputed that the shipper, plaintiff GIC Services, LLC ("GIC"), contracted with FreightPlus to ship the REBEL from Houston, Texas to Lagos, Nigeria. FreightPlus alleges that it subcontracted with a non-party, Yacht Path, for Yacht Path and another non-party, Unity, to transport the REBEL to Lagos from Houston. Rec. Doc. 39, ¶ 6. Yacht Path thereupon engaged IMC through IMC's agent,

1

Intermarine, to transport the REBEL. IMC transported the REBEL but delivered it to Warri, Nigeria instead of Lagos.

In March 2013, GIC brought an action in the Southern District of Texas to recover damages caused by FreightPlus's alleged failure to perform the shipping agreement and fraud based on the allegation that FreightPlus knew that the vessel on which it planned to ship the REBEL would not stop in Lagos. Rec. Doc. 1, ¶¶ 12, 20-21. The complaint alleged that FreightPlus was the "ocean carrier," an allegation that FreightPlus denies, claiming that it only served as a "non-vessel operating common carrier" ("NVOCC") in this transaction. *Id.*, ¶ 9; Rec. Doc. 39, ¶ 4. After filing its answer to GIC's complaint, FreightPlus impleaded IMC under Rule 14(a) of the Federal Rules of Civil Procedure and interpleaded it under Rule 14(c), alleging IMC's negligence in producing a manifest that listed Warri as the port of discharge for the REBEL instead of Lagos. Rec. Doc. 14-1.

IMC filed a motion to dismiss the third-party complaint based on a forum selection clause, which the district court denied without prejudice to a motion to transfer. Rec. Doc. 27. IMC filed the motion to transfer, sending this case to this Court. Rec. Docs. 28 & 43. FreightPlus meanwhile amended its third-party complaint to clarify the facts and circumstances of its claims against IMC. Rec. Docs. 39 & 40. Yacht Path is in ongoing bankruptcy proceedings and has not been made a party in this action.

After the case was transferred, IMC moved to dismiss FreightPlus's amended third-party complaint, for failure to state a claim upon which relief can be granted. Rec. Doc. 48. FreightPlus opposed and further requested leave to voluntarily dismiss its Rule 14(c) interpleader claim against IMC without prejudice by filing a second amended third-party complaint. Rec. Doc. 66.

2

IMC, in turn, opposed the motion for leave to file the second amended third-party complaint. Rec. Doc. 74.

## II. CONTENTIONS OF THE PARTIES

IMC argues that FreightPlus's maritime indemnity claim under Rule 14(a) should be dismissed because there is no legal basis for a right to indemnity under the circumstances and because FreightPlus fails to properly allege that IMC breached a legal obligation to any party in this case by delivering the REBEL to Warri. IMC next argues that FreightPlus's maritime interpleader claim should be dismissed as procedurally improper because the GIC's main demand has not been properly designated a maritime claim and because GIC's complaint cannot be construed to implicate IMC in the wrongdoing that FreightPlus allegedly committed.

In opposition, FreightPlus argues that it has properly alleged IMC's negligence in misdelivering the REBEL to Warri and that it is entitled to indemnity from IMC because there is a significant difference in their degree of responsibility for GIC's losses and a difference in the character of duties that they owed to GIC. Finally, in its motion for leave to file second amended third-party complaint, FreightPlus argues that no party will be prejudiced by voluntary dismissal at this point in the litigation.

IMC replies that the Court should adjudicate its motion and dismiss FreightPlus's entire complaint with prejudice, notwithstanding FreightPlus's willingness to dismiss without prejudice. IMC argues that the cases cited by FreightPlus in support of indemnity are either dead letter or inapposite. Finally, IMC argues that its obligation to deliver the REBEL to Warri and not Lagos is undisputed and negates any possibility of its negligence.

## III. STANDARD OF REVIEW

3

A motion to dismiss for failure to state a claim should be granted when the well-pleaded factual allegations of a complaint do not plausibly give rise to entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). The court's review of such a motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). When reviewing a motion to dismiss, a court must treat as established all well-pleaded allegations of the complaint and the attached documents. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court further construes those allegations liberally in favor of the non-moving party. *Id.*

To survive a motion to dismiss for failure to state a claim, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555, 127 S. Ct. at 1965 (citations omitted). The complaint must include more than "labels and conclusions" and "a formulaic recitation of required elements." *Id.* at 555, 127 S. Ct. at 1964-65.

## IV. ANALYSIS

### A. Claim 1: Maritime Indemnity and/or Contribution under Rule 14(a)

IMC first argues that FreightPlus's maritime indemnity and/or contribution claim should be dismissed because FreightPlus's complaint fails to identify a plausible basis for the imposition of a duty to indemnify, given the limited availability of tort-based maritime indemnity. Rec. Doc.

48-1 at 5-6. Next, IMC argues that FreightPlus fails to properly allege that it was in any way negligent or derelict in its performance of its carriage agreement with YachtPath. *Id.* at 6-7.

General maritime law continues to recognize claims for indemnity based on both contract and tort law principles. *Cities Serv. Co. v. Lee-Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985). FreightPlus has not alleged the parties were not bound in contract with respect to delivery of the M/V REBEL. The availability of tort-based indemnity is currently "quite limited" due to the Supreme Court's embrace of the doctrine of comparative fault. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992). The Supreme Court has observed that indemnity between maritime tortfeasors should only be available "where proportionate degrees of fault cannot be measured and determined on a rational basis." *United States v. Reliable Transfer Co.*, 421 U.S. 397, 405, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

Notwithstanding *Reliable Transfer*, the Fifth Circuit has historically recognized a right to tort-based indemnity in three circumstances: where there is a special relationship and duty owed between the parties; where there is a significant difference in the kind or quality of conduct of the parties; and where there is a difference in the character of duty owed to the injured party. *Cities Serv. Co.*, 761 F.2d at 240.

*1. Difference in Degree of Conduct*

FreightPlus first argues that it has properly pleaded an indemnity claim against IMC because its factual allegations establish a significant difference in the degree of its conduct and IMC's conduct vis-a-vis the injured GIC. Rec. Doc. 61 at 8. Under this theory, the Fifth Circuit previously found that a rig owner was entitled to indemnity from a contractor for injuries that a roughneck sustained due to a defective elevator. *Id.* at 240-241 (examining *Tri-State Oil Tool*

5

*Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178 (5th Cir.1969)). Indemnity was based on the fact that the rig owner had only been passively negligent in allowing the unseaworthy conditions to persist, while the contractor had been actively negligent in the installation of the elevator. *Id.* However, this active/passive distinction was among the tort-based theories of indemnity that the Fifth Circuit abandoned after *Reliable Transfer*. *See id.* at 241 n.1 ("In *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 498-502 (5th Cir.1982), this court abandoned indemnity based on the concept of active/passive conduct in favor of contribution among tortfeasors based on their degree of responsibility.").

Furthermore, FreightPlus has not stated a claim against IMC in tort that would allow for a genuine degree of fault comparison. FreightPlus does not allege that the parties share responsibility for what GIC has alleged was intentional fraud. The analogy of FreightPlus alleged breach of contract to passive negligence is somewhat strained in that there is no act or omission on FreightPlus's part to compare to those it alleges on IMC's part. *But see SPM v. M/V Ming Moon*, 22 F.3d 523, 526 (2nd Cir. 1994) (analogizing breach of shipping agreement to passive negligence).[1] For these reasons, FreightPlus cannot survive the motion to dismiss on this theory.

## 2. Difference in Character of Duty Owed to GIC

FreightPlus next argues that it has successfully pleaded indemnity because its allegations show a difference in the character of duty it owed to the injured party compared to IMC. Rec. Doc. 61 at 9. A difference in duties serves as a basis for indemnity for "defendants on which the law imposes responsibility even though they committed no negligent acts." *Hardy*, 949 F.2d at

---

[1] Because this fact would frustrate the ability to award damages on a proportional basis, it further strengthens the argument for indemnity. *See Reliable Transfer Co.*, 421 U.S. at 407, 95 S. Ct. at 1714.

833; *see also Cities Serv. Co.*, 761 F.2d at 241. Under this theory, the Fifth Circuit has allowed maritime employers to claim indemnity for maintenance and cure paid to seamen injured as a result of another's negligence. *Savoie v. La Fourche Boat Rentals, Inc.*, 627 F.2d 722, 723-24 (5th Cir.1980); *see also Cities Service Co.*, 761 F.2d at 241 (examining *Savoie*). It has also allowed a vessel owner to claim indemnity from a manufacturer for damages paid to a pipeline owner as a result of the manufacturer's defective product, where the vessel owner was only constructively or vicariously liable for those damages in the first place. *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 233, 236 (5th Cir. 1985); *see also Hardy*, 949 F.2d at 833 (examining *Marathon Pipe Line*). FreightPlus argues that its liabilities as an NVOCC and "carrier" under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 30701, *et seq.*, are analogous. The Court agrees.

GIC's breach of contract claim against FreightPlus is based a shipping agreement confected in a bill of lading. Rec. Doc. 1-1. "COGSA governs the relationship between the parties to a bill of lading where that document is issued as a contract of carriage." *Hartford Fire Ins. Co. v. Novocargo USA Inc.*, 257 F. Supp. 2d 665, 671 (S.D.N.Y. 2003); Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 10-16 (5th ed.). According to Federal Maritime Commission regulations, an NVOCC is a "carrier that does not operate vessels by which ocean transportation is provided." 46 U.S.C. § 40102. However, by contrast to a "freight forwarder," an NVOCC "does not merely arrange for the transportation of goods, but takes on the responsibility of delivering the goods" in a bill of lading. *Scholastic Inc. v. M/V Kitano*, 362 F. Supp. 2d 449, 455-456 (S.D.N.Y. 2005).

Courts have treated NVOCCs as "carriers" within the meaning of COGSA for purposes of determining their liabilities to shippers for shipping mishaps. *See, e.g.*, *M. Prusman Ltd. v. M/V*

7

*Nathaniel*, 670 F. Supp. 1141, 1143 (S.D.N.Y. 1987); *accord* 46 U.S.C. § 30701 ("In this chapter, the term 'carrier' means the owner, manager, charterer, agent, or master of a vessel."). Carriers face a non-delegable duty to ensure delivery to the proper destination and strict, non-waivable liability for breach of those duties. *See* Schoenbaum, 1 Admiralty & Mar. Law § 10-18 ("The duty of proper delivery is a non-delegable duty of the carrier . . . . The carrier is strictly liable for misdelivered goods . . . ."). For this reason, FreightPlus would be strictly liable to GIC should its allegations be proven.

In such circumstances, courts have held ocean carriers liable to indemnify NVOCC's for acts of negligence leading to loss by the shipper. *See M/V Ming Moon*, 22 F.3d at 526 (recognizing a right to indemnity where NVOCC's "liability arose entirely from its contractual relationship with [shipper] and was triggered by [carrier's] negligence"); *Insurance Co. of North America v. M/V Ocean Lynx*, 901 F.2d 934, 941 (11th Cir. 1990) (describing the shipper and the carrier as "[t]he real parties in interest" in a damages claim against the NVOCC for goods lost at sea). As such, FreightPlus need only allege that GIC was injured as a result of IMC's negligence. FreightPlus easily clears this hurdle.[2]

---

[2] FreightPlus also has a right to indemnity "predicated upon a special relationship and resulting duty" owed by IMC. *City Services, Co.*, 761 F.2d at 240. The example of this kind of indemnity cited in *City Services, Co.* was the Supreme Court's opinion in *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 89 S. Ct. 1144, 22 L. Ed. 2d 371 (1969). There, the Court held that a shipowner's duty of care to longshoremen aboard its ship extended to the stevedoring company that supplied the longshoremen, such that the shipowner could be liable to the stevedoring company directly for worker's compensation benefits that the stevedoring company owed the longshoremen due to the shipowner's negligence. *Id.* at 415-418, 89 S. Ct. at 1150-52.

In *LCI Shipholdings, Inc. v. Muller Weingarten AG*, the Fifth Circuit considered whether a shipping intermediary may avail itself of this kind of indemnity against an ocean carrier for goods damaged in shipment. 153 F. App'x 929 (5th Cir. 2005). The Fifth Circuit found that a freight forwarder was barred from doing so because a carrier's duties to the shipper could not extend to the freight forwarder. *See id.* at 931 ("the damages claimed in this case arise from damage to

Maritime negligence requires a duty owed by the defendant to the injured party, breach of that duty, and a causal connection between the defendant's conduct and the injury. *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000). The Court has no trouble concluding that an ocean carrier owes a shipper a duty to honor the point of discharge duly conveyed by a shipping intermediary. *See* Schoenbaum, 1 Admiralty & Mar. Law § 10-18; *see also id.* (stating that whether a defendant owes a plaintiff a particular duty is a question of law). The shipper is the party most foreseeably injured by the carrier's negligence in abiding by the terms of a carriage agreement. *Id.* (stating that whether a duty exists is measured by the scope of the risk that negligent conduct foreseeably entails).

Moreover, FreightPlus has adequately alleged that IMC's breach of this duty caused GIC's losses. FreightPlus has alleged that "due to the acts and/or omissions of [IMC], an error was made in the manifest which resulted in the IMC ocean bill of lading showing that the tugboat was to be delivered to Warri, Nigeria instead of Lagos, Nigeria." Rec. Doc. 39, ¶ 10. FreightPlus has further alleged that "IMC and/or its agent . . . was aware that cargo was booked for discharge in Lagos and confirmed this fact with Yacht Plus [sic] and Unity, who in turn communicated with FreightPlus regarding discharge of the cargo in Lagos, Nigeria." *Id.*, ¶ 8. It is implicit in these allegations that YachtPath in some way and at some point before IMC printed its "erroneous" manifest charged IMC with delivering the REBEL to Lagos. This suffices to state a claim for

---

[shipper's] cargo, and any duty breached by [the carrier] that could have caused the damage was a duty to . . . the shipper, not to . . . the freight forwarder.").

     As FreightPlus has argued, an NVOCC's relationship with a shipper differs from a freight forwarder's in that the NVOCC is the shipper's agent and a shipper in its own right with respect to the ocean carrier. 46 U.S.C. § 40102; *M/V Ming Moon*, 22 F.3d at 526 (citing *M/V Ocean Lynx*, 901 F.2d at 941). Because of this relationship, any duty breached by IMC's allegedly negligent misdelivery extended to FreightPlus as well as GIC.

9

maritime negligence. At this point in the case, FreightPlus need not allege exactly where, when, and how that mandate was conveyed. For the time being, the allegation that such an instruction was incorporated into the contract of carriage is made plausible by the alleged conversations between IMC and YachtPath.

IMC argues that dismissal should nevertheless be granted because the whole of its shipping agreement with YachtPath is captured by the booking documentation and bill of lading which list Warri as the port of discharge. Rec. Doc. 77 at 7. However, it is clear from the allegations discussed above that FreightPlus disputes the authenticity of these documents. If this dispute is truly baseless, discovery should quickly establish this fact. For the time being, the claim may move forward. For these reasons, IMC's motion to dismiss is denied as to Claim 1.

### B. Claim 2: Maritime Interpleader under Fed. R. Civ. P. 14(c)

IMC argues that FreightPlus's interpleader claim should be dismissed because neither GIC nor FreightPlus has alleged a set of facts under which it could be liable to GIC.[3] IMC points out that it cannot be liable under the bill of lading between GIC and Freightplus or for making misrepresentations relied upon by GIC under the facts alleged in the GIC's complaint or the amended third-party complaint. Rec. Doc. 48-1 at 8-10. However, this argument exaggerates the requirement for a relationship between the main demand and a third-party claim under Rule 14(c).

Rule 14(c) allows a third-party plaintiff to interplead any third-party defendant "who may be wholly or partly liable . . . to the plaintiff . . . for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." It does not require that the third-party defendant be liable to the plaintiff <u>on the exact same theory</u> as the

---

[3]Because IMC moved to dismiss this claim with prejudice before FreightPlus moved to dismiss it without prejudice, the Court considers the merits of IMC's motion first.

defendant/third-party plaintiff. To interplead IMC, FreightPlus need only allege facts sufficient to plausibly show that IMC is liable to GIC on account of delivery of the REBEL to Warri. As already explained above, FreightPlus has met this requirement. Therefore, dismissal of this claim with prejudice is unwarranted.

Finally, IMC argues that FreightPlus cannot interplead it under Rule 14(c) because GIC's claims have not been "designated admiralty and maritime claims under Rule 9(h)." Rec. Doc. 48-1 at 8.

Rule 14(c) can be invoked when a "plaintiff asserts an admiralty or maritime claim under Rule 9(h)." This rule applies "whenever the plaintiff has asserted a claim which has been specifically identified in the complaint as one in admiralty pursuant to Rule 9(h), or (2) when it is apparent from a reading of the complaint that admiralty jurisdiction is the only basis for federal subject matter jurisdiction over the action." *Harrison v. Glendell Drilling Co.*, 679 F. Supp. 1413, 1418 (W.D. La. 1988). "[W]here the complaint shows that both admiralty and some other basis of federal jurisdiction exist, the plaintiff must employ an 'identifying statement' in accordance with Rule 9(h) in order to be entitled to the special benefits afforded to admiralty litigants under the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims." *Id.* (citing *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir.1975), *Duhon v. Koch Exploration Co.*, 628 F. Supp. 925, 928, 929 n. 8 (W.D. La. 1986), and 5 Wright & Miller, Federal Practice and Procedure, § 1313 at 454 (1969)).

GIC's original complaint does not contain a proper "identifying statement." On the contrary, GIC has designated its breach of contract action "civil." Rec. Doc. 1, ¶ 3. Thus, although maritime jurisdiction is available for GIC's breach of contract claim, *see* Rec. Doc. 9, GIC has not invoked it or the special procedures which flow from its exercise. *Harrison*, 679 F.

Supp. at 1418. Dismissal is warranted. However, because GIC may yet obtain leave to add a maritime designation to its breach of contract claim, *see T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983), the Court will only dismiss this claim without prejudice, as FreightPlus has requested in its motion. Rec. Doc. 66.

Accordingly,

IT IS ORDERED that IMC's Motion to Dismiss FreightPlus (USA), Inc.'s Third-Party Complaint for Failure to State a Claim under FRCP 12(b)(6) is DENIED. Rec. Doc. 48.

IT IS FURTHER ORDERED that FreightPlus's Motion for Leave to File Second Amended Third-Party Complaint to Dismiss Certain Claims is GRANTED. Rec. Doc. 66. FreightPlus's maritime interpleader claim is dismissed without prejudice to reinstatement consistent with Rule 14(c). FreightPlus's proposed second amended third-party complaint shall be filed into the record in this matter. Rec. Doc. 66-4.

New Orleans, Louisiana, this 12th day of May, 2014

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**