UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GIC SERVICES, LLC | CIV. A. 13-6781 |
| VERSUS | SECTION "C" |
| FREIGHTPLUS (USA), INC. | HON. HELEN BERRIGAN |

## ORDER AND REASONS

This matter comes to the Court, on the Rule 59(e) motions to alter or amend a judgment by defendant Freightplus (USA), Inc. ("Freightplus") and third-party defendant Industrial Maritime Carriers, L.L.C. ("IMC"). *See* Rec. Docs. 191 and 198. For the reasons articulated more fully below, the Court GRANTS IN PART and DENIES IN PART each motion. Accordingly, the Court further amends its amended judgment (Rec. Doc. 190) to reflect a damage award to GIC of $1,811,385 against Freightplus, with prejudgment interest of 5% per annum. Furthermore, the Court reaffirms IMC's obligation to indemnify Freightplus for 30% of GIC's damage award plus any associated prejudgment interest on that 30% portion of the award. Finally, the Courts amends its judgment to reflect that IMC will not have to pay for any percentage of Freightplus' attorneys' fees incurred in defending GIC's suit.

**I. Facts and Procedural History**

Plaintiff GIC Services, LLC ("GIC") brought suit against Freightplus for breach of contract seeking damages for the mistaken delivery of its tugboat the M/V REBEL

1

("REBEL") to Warri, Nigeria, rather than Lagos, Nigeria. *See* Rec. Doc. 1. Freightplus subsequently filed a third-party complaint against IMC, claiming IMC was liable for indemnity and/or contribution for any losses or damages sustained by GIC due to IMC's default, negligence, carelessness, or omissions. *See* Rec. Doc. 60. IMC then asserted a counterclaim against Freightplus and the REBEL for unpaid freight charges owed for carriage of the REBEL. *See* Rec. Doc. 93. Before trial, the Court denied IMC's motion to dismiss Freightplus' indemnity claim, noting that two theories of tort indemnity liability possibly applied to IMC. *See* Rec. Doc. 91 at 6–8.

After a two-day trial, the Court found Freightplus liable to GIC for $1,860,985. Rec. Doc. 186. The Court stated that "[p]rejudgment interest shall be calculated at a rate of 5% from January 17, 2013 to the date of judgment." *See id.* at 23. The Court in turn ruled that IMC was obligated to indemnify 30% of Freightplus' liability to GIC for "mistakenly recording the REBEL's port of discharge as Warri and failing to correct the port of discharge when it became known to its agent that the REBEL was actually contracted to discharge at Lagos." *Id.* at 23–24. Furthermore, the Court ruled that Freightplus was entitled to collect from IMC 30% of its attorneys' fees spent in defending GIC's suit. *See id.* Finally, the Court ruled that IMC was entitled to recover unpaid freight from Freightplus. *See id.*

Freightplus' Rule 59(e) motion asks the Court to alter the quantum of GIC's damages and clarify IMC's obligation to pay prejudgment interest on its indemnity obligation to Freightplus. Rec. Doc. 191. IMC's Rule 59(e) motion likewise asks the Court to alter the quantum of GIC's damages; however, it also asks that the Court revoke IMC's obligation to pay 30% of Freightplus' attorneys' fees. *See* Rec. Doc. 198.

2

Accordingly, before the Court are three issues raised on Rule 59(e) motions. First, whether the Court correctly awarded damages of $1,860,985 to GIC. Second, whether IMC must pay prejudgment interest on its indemnity liability to Freightplus. And third, whether the Court correctly ordered IMC to pay 30% of Freightplus' attorneys' fees.

## II. Standard of Review

Rule 59(e) motions call "into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (internal quotation omitted). Such motions are not "the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479. Indeed, reconsideration of a judgment after entry is an "extraordinary remedy that should be used sparingly" *Id.* "Alteration or amendment of a decision under Rule 59(e) is proper upon the movant's showing of: (1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of fact or law." *M/G-T Services Inc. v. Turn Service Inc.*, 2002 WL 27765 *2 (E.D.La. 2002) (internal quotation omitted). While a district court exercises considerable discretion when responding to a motion for reconsideration, it has the judicial imperative to strike a balance between the need to bring litigation to a close and the need to "render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479.

## III. Discussion

A. GIC's Damages

Freightplus and IMC contend that the Court erred in determining GIC's damages in two ways. First, that the Court erred by relying upon the email correspondence in Trial Exhibit 65 to determine the cost of shipping the REBEL from Warri to Lagos and the

Visifi invoice in Trial Exhibit 101 to determine the cost of storing, securing, and releasing the REBEL in Warri.[1] Second, that the Court miscalculated the total sum of damages based off the rates stated in the Visifi invoice. As discussed below, the Court is not convinced that its reference to the two exhibits was in error; however, the Court did miscalculate the total sum of GIC's damages based on those exhibits and so amends its judgment accordingly.

    *i.*        *Exhibit 65*

Exhibit 65 is an email chain including emails from Freightplus, an attorney for GIC, and a carrier Yacht Path. In the chain, the attorney for GIC states that "[m]y client has informed me that his cost to transport the Tugboat to Lagos will cost $55,985.00. The expenses for the clearing agent is $5,600.00." *Id.* The exhibit was included in the Pretrial Order by Freightplus, without any apparent objection before or at trial by either Freightplus or IMC. *See* Rec. Doc. 177 at 40; *see also* Trial Tr., May 11 & 12, 2015. IMC argues that the Court's reference to these figures to determine the cost of transporting the REBEL amounts to reliance on inadmissible evidence per Rule 408 and would instead have the Court determine transportation costs by reference to the deposition of a Yacht Path employee admitted at trial. *See* Rec. Doc. 198-2 at 4–5; *see also* Trial Ex. 125 at 124–25. Particularly in the absence of a Rule 408 objection before or after trial,[2] the Court is not convinced it was clear and manifest error to reference Trial Exhibit 65 to

---

[1] Freightplus' Rule 59(e) motion challenges only the Court's reliance on Trial Exhibit 101, while IMC's subsequently filed Rule 59(e) motion challenges the use of both Trial Exhibit 101 and 65. *See* Rec. Docs. 191-1 and 198-2 at 4–5.

[2] Besides the general instruction that Rule 59(e) is not "the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," the Court is unaware of binding precedent regarding waiver of Rule 408. *Templet*, 367 F.3d at 479. The Ninth Circuit's decision in *NMB Air Operations Corp. v. McEvoy*, however, supports the conclusion that a party challenging admissibility under Rule 408 must raise the objection before or at trial. 194 F.3d 1317, 3 (Table) (9th Cir. 1999).

determine the cost of transporting the REBEL from Warri to Lagos. Accordingly, the Court will not alter its judgment as to damages for transporting the REBEL.

    *ii.*    *Exhibit 101*

Exhibit 101 is an invoice from Visifi to GIC's parent company, providing a detailed breakdown of the costs for storing, securing, and releasing the REBEL in Warri. Freightplus and IMC contend that the Exhibit was never properly authenticated at trial and therefore the Court erred in using it to determine GIC's damages. Rec. Docs. 191-1 and 198-2. Instead, Freightplus and IMC urge the Court to alter its judgment by disregarding the Visifi invoice and instead referencing a "Provisional Quotation/Proforma Bill for MV REBEL" issued by Julius Berger, the company charged with storing the REBEL in Warri. *See* Rec. Docs. 191-1 at 6–7 and 198-2 at 8–9.

Before trial, counsel for Freightplus and IMC objected to the introduction of the Visifi invoice on relevance and authentication grounds, as well as on the grounds that the invoice was produced after the discovery cutoff date. *See* Rec. Doc. 177 at 35. The Court overruled the objections as to relevancy and late production, but deferred as to authentication. Rec. Doc. 167 at 3. In the final pretrial order, GIC stated that it anticipated calling "any witness needed to authenticate any documents that cannot be agreed to by stipulation." Rec. Doc. 177 at 45. At trial, counsel for GIC called Godwin Ebolo, the Managing Director of GIC's parent company, as an authentication witness. The relevant portion of the transcript reads as follows:

> **MR. BOONE:** Your Honor, I'd like to call Mr. Godwin Ebolo as my authentication federal witness.
>
> **MR. WALTERS:** Your Honor, we would object to this witness testifying. He was not listed in the pretrial order. To the extent that he's called specifically for a Rule 901 authentication, we will stipulate, and I think –

> **MR. WAGUESPACK:** We'll stipulate as well, Your Honor.
>
> **MR. BOONE:** All right. And that's all he was going to testify to, nothing substantive, just to authenticate those document that Freightplus and IMC both objected to, which are the three contracts and the agency agreement.
>
> **THE COURT:** All right. So do we have a stipulation?
>
> **MR. WALTERS:** Yes. As far as Freightplus, yes.
>
> **MR. WAGUESPACK:** As far as IMC as well.
>
> **THE COURT:** Okay.
>
> > Well, sir, you can go home.
> >
> > Oh, you still want to call him?
>
> **MR. WALTERS:** He's been excused.
>
> **MR. BOONE:** Oh, wait.
>
> **MR. WALTERS:** We stipulated to authentication. There's no --  if that's the only purpose he would be testifying.
>
> **MR. BOONE:** Yeah. He's testifying for authentication.
>
> **MR. WALTERS:** We've stipulated to authentication.
>
> **MR. BOONE:** Oh, you have?
>
> **MR. WALTERS:** Yes.
>
> **MR. BOONE:** Oh, all right. I'm sorry. I heard you wrong.
>
> **MR. WALTERS:** No.
>
> **MR. BOONE:** Okay.
>
> **THE COURT:** So you can go home.

Trial Tr., 19–20, May 12,2015. IMC and Freightplus contend that GIC's counsel specifically limited the purpose of calling the witness by stating "just to authenticate those document that Freightplus and IMC both objected to, which are the three contracts and the agency agreement." This argument fails to account for the fact that counsel for both Freightplus and IMC apparently proffered a blanket Rule 901 authentication stipulation for Godwin Ebolo's testimony before GIC's counsel then responded regarding

the documents to be authenticated. Acknowledging that counsel for each side could have been more exact in what they were attempting to convey to the Court, the Court fairly took the intent of counsel for Freightplus and IMC to be to stipulate as to authentication generally. Stipulating as such to the authentication testimony of the Managing Director for GIC's parent company—the company that received the Visifi invoice—amounted to waiver of the earlier authentication objection to the Visifi invoice. Therefore, the Court did not err in referencing the Visifi invoice when determining GIC's damages.

As to the Court's use of the Visifi invoice rather than the Julius Berger invoice, the Court is unconvinced that it was clear and manifest error to find the Visifi invoice a more credible foundation for determining GIC's damages than the provisional quotation provided by Julius Berger. The Court rejects Freightplus' argument that, because the Court rejected GIC's claim for the lost profits of its parent company on the grounds that it did not have standing to seek recovery of such lost profits, the Court therefore should not have relied on any evidence stemming from GIC's parent company regarding the costs associated with the misdelivery of the REBEL. *See* Rec. Docs. 186 at 23 and 216 at 5–6. It is reasonable to assume that GIC's parent would be involved with recovering the REBEL from Warri and receive invoices related to such efforts. The Court therefore reaffirms that the Visifi invoice provides a sufficiently credible and detailed summary of the costs of releasing the REBEL from storage in Warri.

    *iii.    Calculation of GIC's Damages*

Apart from its argument regarding the authenticity of the Visifi invoice, Freightplus maintains that the Court erred in its calculation of GIC's damages based on the rates included in the invoice. *See* Rec. Doc. 191-1 at 5–6. The Court agrees. The

Court incorrectly calculated the total number of days that passed between February 1, 2015, (the date up until which the Visifi invoice provides firm cost figures) and the date upon which it entered its original judgment). Accordingly, an additional $289,600 for storage and security (181 days at $1600 per day) should have been tacked on to the $1,195,200 sum for storage and security listed in the Visifi invoice through January 31, 2015. This means that the correct total of GIC's total damages is $1,811,385.

B. Prejudgment Interest

The Rule 59(e) motion of Freightplus asks that the Court clarify the terms of its award of prejudgment interest and the extent to which IMC is responsible for any such interest. A district court exercises its "sound discretion" when determining prejudgment interest. *Krummel v. Bombardier Corp.*, 206 F.3d 548, 573 (5th Cir. 2000). The Court clarifies that IMC is obligated to indemnify Freightplus for 30% of GIC's damages including the accrued 5% per annum prejudgment interest on that 30% portion of GIC's damages.

C. Attorney's Fees

IMC argues that the Court improperly ordered IMC to pay 30% of Freightplus' attorneys' fees. This is because the Court's 30% indemnity award to Freightplus sounded in comparative fault and therefore the award of attorneys' fees was inappropriate under Fifth Circuit precedent. *See* Rec. Doc. 198-2 at 9–11. IMC contends that the Fifth Circuit's decision in *Odd Bergs Tankrederi A/S v. S/T Gulfspray*, 650 F.2d 652 (5th Cir. 1981) precludes an award of attorneys' fees as between defendants in any case of defendants with shared fault. *See* Rec. Doc. 198-2 at 10–11. *Odd Berg* involved a contribution claim by a separately sued tortfeasor against a joint tortfeasor where the two tortfeasors had previously agreed on a proportional division of damages owed to a group

of injured plaintiffs. *See Odd Bergs*, 650 F.2d at 653. The *Odd Berg* court reasoned that an award of attorneys' fees was not appropriate as between joint tortfeasors in a contribution action, since "a tortfeasor defends against claims of its own negligence rather than the negligence of others, and it will benefit directly from the defense." *Id.* at 654.

Unlike *Odd Bergs*, Freightplus' liability stemmed from a breach of contract, while IMC was held liable to Freightplus on a tort-based indemnity theory. Rec. Docs. 186 and 91. However, the Court's opinion did apportion fault as to GIC's damages for Freightplus' indemnity claim, since Freightplus' conduct in part led to its contract liability, while IMC's negligence frustrated efforts to correct the mistaken shipping instructions. Rec. Doc. 186. Unconvinced that *Odd Bergs* necessarily commands a particular outcome in this case, the Court nonetheless follows what it takes as the clear policy of the decision and its companions to deny the award of attorneys' fees except in cases of faultless defendants or indemnity obligations covering the entirety of the indemnified defendant's liability. *See Odd Berg*, 650 F.2d at 654–55; *see also Sea-Land Service, Inc. v. Crescent Towing & Salvage Co., Inc.*, 42 F.3d 960, 963 (5th Cir. 1995) (fees not recoverable "when proportionate fault and contribution are applied").

The Court therefore will amend its judgment to vacate the order obligating IMC to pay 30% of Freightplus' attorneys' fees.

Accordingly,

IT IS ORDERED that the defendant Freightplus' Rule 59(e) motion is hereby GRANTED IN PART AND DENIED IN PART to correct the total amount of GIC's damages from the incorrect total of $1,860,985 to the correct total of $1,811,385 and to

clarify that IMC is obligated to indemnify Freightplus for 30% of GIC's total damages including the accrued prejudgment interest on that 30% portion of GIC's damages. Rec. Doc. 191.

IT IS FURTHER ORDERED that the third-party defendant IMC's motion to alter or amend the amended judgment is hereby GRANTED IN PART AND DENIED IN PART to reflect the corrected amount of GIC's damages listed in the paragraph immediately above and to vacate its order obligating IMC to pay 30% of the attorneys' fees incurred by Freightplus in defending this suit. Rec. Doc. 198.

New Orleans, Louisiana, this 24th day of September, 2015

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE